THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PAUL G. JOHNSON, Defendant-Appellant.

First District (4th Division)    No. 77-1963

Opinion filed November 9, 1978.

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Francis X. Speh, Jr., and Pamela E. Loza, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial, the defendant, Paul G. Johnson, was convicted of the offense of involuntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—3), and sentenced to a term of 2 to 10 years. On appeal, defendant contends that the maximum sentence is excessive.

On September 29, 1976, the defendant was arrested and subsequently charged with the murder of two-year-old Kenneth Willmore. Linda Willmore testified that she and her two-year-old son, the deceased, were living with the defendant in his mother's home. On the above date at 4:30 p.m. she left the deceased child in the care of the defendant. About 5 p.m. she telephoned the defendant and asked him to dress the child and come to her mother's home for dinner. Thereafter, the defendant's mother came to Linda and informed her the child was in the hospital. Upon arriving at the hospital, Linda learned that her child was dead. She further testified that just before leaving her son with the defendant, she had changed his diaper and had observed a two-week-old bruise on his stomach which occurred while the defendant was playing with the child, and another bruise on his back which was the result of a fall while climbing off the bed. She admitted that she daily played with the child during which she would playfully hit him in the

stomach with her fist, but denied that she had done so on the day of his death.

Charles O'Connor, a Chicago Fire Department paramedic, testified that in response to a call he went to the defendant's home and met a woman coming out of the back door with a child in her arms. She told him that the child had stopped breathing. He took the child to the ambulance when he could find no vital signs. The defendant walked with him, and when O'Connor asked what happened the defendant replied that he was playing with the child, gave him a little shove, and the child fell and hit his head. During attempts to revive the child, O'Connor noticed a redness and swelling about the child's stomach. The child was transported to St. Mary's Hospital where he was pronounced dead on arrival.

Chicago Police Office Michael Miller testified that he conferred with Dr. Tiro and examined the deceased child. He spoke to the defendant and transported him to police headquarters. The defendant was given *Miranda* warnings, after which he told the officer that he was dressing the child to take him to Linda's mother's home for dinner when the child fell backwards and struck his head and began to have difficulty breathing. When the officer told him that the bruises on the child's body were not consistent with his story, the defendant said that he did not mean to kill the child. He then told the officer that while he was attempting to dress the child, the child began to cry. He pushed the child backwards and struck him four or five times in the stomach with his fist. He then turned to get the child's shoes, and upon turning back, saw that the child was having difficulty breathing. The officer stated that thereafter the defendant gave a written statement to the assistant State's attorney, which he signed.

Mildred Johnson, the defendant's mother, testified that she returned home at 5 p.m. after an absence of 2 hours, and heard the defendant ask her to come upstairs. She found the defendant giving mouth-to-mouth resuscitation to the child, and she also attempted to do the same. She then washed the child's head with a cold wet towel. When their efforts failed, the defendant called the fire department. She further testified that defendant told her that the child fell. She said she never saw the defendant hit the child, but she had seen the child's mother "play-fight" with the child by hitting him in the stomach with her fist.

Dr. Aurelio Tiro testified that he and his medical team worked for 10 to 15 minutes to revive the child, but failed. He observed that the child had bruises on the right side of the cheek, bruises above and below the abdomen, and also below the middle part of the back on the left side. He stated that in his opinion, the bruises were less than 24 hours old. Janis Kubiszak, a registered nurse at the hospital, corroborated Dr. Tiro's testimony as to the bruises on the child's abdomen, and on rebuttal testified that she had a private conversation with the defendant during

which he stated that he pushed the child causing him to fall and hit his head; and that thereafter the child developed a shortness of breath which defendant attempted to alleviate by rubbing his stomach, then administering tea, and finally administering mouth-to-mouth resuscitation.

Dr. Robert J. Stein, chief medical examiner of Cook County, testified that he performed a post-mortem examination on the child's body. Externally there were bruises on the abdominal wall, the right upper thigh, and in the area of the jaw. Internally, there was a mesentery tear, a tear in the peritoneum lining, and blood within the scrotum. In his opinion, the cause of death was multiple internal injuries due to trauma.

The defendant testified in his own behalf that Linda left their home with her mother at 3 p.m., and that he went to the bedroom where the child was and watched television. Linda telephoned him and asked him to dress the baby and come to her mother's house for dinner. He started to dress the child, and the child began pushing and turning away. The child then began to cry and would not remain still. He hit the child with the back of his open hand and went to get his shoes. When he turned back, he noticed the child was having trouble breathing. He attempted mouth-to-mouth resuscitation during which the child vomited three times. He washed the child's face in cold water, but he did not revive. He stated that he did not intend to hurt the child.

At the hearing in aggravation and mitigation it was brought out that defendant had no prior criminal record, and that he was 24 years of age.

Defendant contends that his age, his lack of a prior criminal record, and the fact that this was an unintentional offense are factors which do not warrant the statutory maximum sentence of 10 years in the penitentiary. This issue was addressed directly by our supreme court in the case of *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, wherein it was held that the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. In reviewing a request for reduction of sentence it must be determined whether or not the trial court failed to exercise sound discretion in imposing the sentence. *People v. Mann* (1975), 30 Ill. App. 3d 508, 333 N.E.2d 467.

In the instant case, the record shows that the trial court considered each of the factors mentioned by the defendant as a basis for his appeal, and we have not found any failure on the part of the trial court to exercise sound discretion in imposing the sentence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ROMITI and LINN, JJ., concur.